## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| NEW CINGULAR WIRELESS PCS LLC, d/b/a AT&T MOBILITY, | ) ) ) | |
| Plaintiff, | ) ) | No. ___5:21-cv-06114___ |
| vs. | ) ) | |
| CITY OF ST. JOSEPH, MISSOURI, and CITY COUNCIL OF THE CITY OF ST. JOSEPH, MISSOURI, | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>COMPLAINT</u>

New Cingular Wireless PCS LLC d/b/a AT&T Mobility ("AT&T"), files this complaint against the City of St. Joseph, Missouri (the "City") and the City Council of the City of St. Joseph, Missouri (the "City Council") (collectively, "Defendants"), in their official capacities, and states as follows:

1. This action arises out of the unlawful denial of AT&T's application for a conditional use permit to construct a wireless communications facility on real property located in the City of St. Joseph, Missouri.

2. AT&T provides wireless voice and data products and services to customers nationwide. By using the latest available wireless telecommunications technology, AT&T benefits its customers and citizens nationwide by providing improved cellular coverage, capacity, and service quality. AT&T also operates FirstNet, a single, interoperable network for public safety agencies and first responders established by Congress.

3.      AT&T filed an original and revised application with the City for a conditional use permit to construct an approximately 175-foot wireless communication tower (the "Facility") and related equipment in the City, to ensure continuous coverage in the City.  The City Council denied both the original and revised application.

4.      AT&T brings this action to require the City to permit the building of a new wireless telecommunications facility that will ensure full and uninterrupted cellular phone coverage and capacity in the City.

5.      AT&T's revised application was complete and complied with all applicable requirements established by the City for issuance of a conditional use permit. The City Council's denial of the revised application was not supported by substantial evidence contained in a written record, effectively prohibits the provision of personal wireless services in the vicinity of the proposed facility, imposes unreasonable regulations and obligations regarding the presentation and appearance of the Facility, and was based on the City Council's evaluation of other potential locations for placement of the Facility.

6.      Accordingly, the City Council's denial of AT&T's revised application violates the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), (the "TCA"), as well as Missouri's Uniform Wireless Communications Infrastructure Deployment Act, RSMo §§ 67.5090 – 67.5103, (the "Missouri Siting Act"), and AT&T is entitled to an order directing the City to grant AT&T's revised application for a conditional use permit to construct the proposed Facility.

**THE PARTIES**

1.      Plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility is a Delaware limited liability company.  It is licensed to conduct business in the State of Missouri and operates

wireless communications facilities throughout the State of Missouri. New Cingular Wireless

PCS LLC is indirectly wholly owned by AT&T Inc., subsidiaries and affiliates of which provide

wireless communication services nationwide.

2.      Defendant City of St. Joseph, Missouri is a political subdivision of the State of

Missouri organized under the Constitution of Missouri.

3.      Defendant City Council of the City of St. Joseph, Missouri is a duly elected board

vested with all powers of the City and providing for the exercise of these powers and for the

performance of all duties and obligations imposed on the City by law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to: 28 U.S.C. § 1331 (federal

question), the TCA, 47 U.S.C. § 332(c)(7)(B)(v), and the Declaratory Judgment Act, 28 U.S.C.

§§ 2201 and 2202.

5.      This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. §

1367(a) over AT&T's claims made pursuant to Missouri law because those state law claims are

so related to the federal claims as to form part of the same case or controversy.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendants

are located in this district and the events and/or omissions giving rise to AT&T's claims arose in

this judicial district.

## LEGAL BACKGROUND

7.      The TCA governs federal, state and local government regulation of the siting of

personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

8.      The purpose of the TCA is to "make available, so far as possible, to all the people

of the United States . . . a rapid, efficient, Nation-wide, and world-wide wire and radio

communications service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

9. The TCA preempts State and local decisions that "prohibit or have the effect of prohibiting the provision of personal wireless services," and requires that State and local decisions denying requests to place personal wireless service facilities, such as cell towers, be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B).

10. The TCA specifically prohibits state and local governing entities from taking actions that effectively prohibit wireless providers from providing service. 47 U.S.C. § 332(c)(7)(B)(i).

11. The TCA states, in pertinent part, that state and local government regulation of personal wireless service facilities:

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B)(i)(I)-(II).

12. The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

13. The Missouri's Siting Act, RSMo §§ 67.5090 – 67.5103 grants local governmental bodies in Missouri limited authority to regulate the telecommunications facilities pursuant to the explicit standards and requirements therein. *See* RSMo § 67.5096.

14. Section 67.5096, provides, *inter alia:*

a.  Authorities may continue to exercise zoning, land use, planning, and permitting authority within their territorial boundaries with regard to the siting of new wireless support structures, subject to the provisions of sections 67.5090 to 67.5103, including without limitation section 67.5094, and subject to federal law.

    RSMo § 67.5096.1.

b.  Any applicant that proposes to construct a new wireless support structure within the jurisdiction of any authority, planning or otherwise, that has adopted planning and zoning regulations in accordance with sections 67.5090 to 67.5103 shall: . . . (2) Comply with applicable local ordinances concerning land use and the appropriate permitting processes.

    RSMo § 67.5096.2.

15.  Section 67.5094, provides that a local govenmental authority shall not, *inter alia:*

a.  Require an applicant to submit information about, or evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site.

    RSMo § 67.5094.1.

b.  Evaluate an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa; provided, however, that solely with respect to an application for a new wireless support structure, an authority may require an applicant to state in such applicant's application that it conducted an analysis of available collocation opportunities on existing wireless towers within the same search ring defined by the applicant, solely for the purpose of confirming that an applicant undertook such an analysis. . . .

    RSMo § 67.5094.2.

c.  Impose any requirements or obligations regarding the presentation or appearance of facilities, including, but not limited to, those relating to the kind or type of materials used and those relating to arranging, screening, or landscaping of facilities if such regulations or obligations are unreasonable.

    RSMo § 67.5094.16.

16.     The City has enacted certain ordinances with respect to the siting of telecommunications facilities within the City. *See* Code of Ordinances of the City of St. Joseph, Missouri, (the "City Code"), §§ 31-300 – 31-311.

## FACTS

### I. Background

17.     AT&T and its affiliates provide wireless voice and data products and services to customers nationwide, including "personal wireless services" within the meaning of Section 332 of the Telecommunications Act, 47 U.S.C. § 332.

18.     The licenses authorizing AT&T to provide wireless service in the City were issued by the FCC pursuant to the Federal Communications Act, as amended.

19.     Wireless service is important to the public safety and for consumer convenience. There are now more wireless subscriptions than landline telephone subscriptions in the United States.   At present, the number of landline telephone subscribers across the nation is declining every year while the number of wireless subscribers increases.

20.     For many Americans, wireless devices have become an indispensable replacement for traditional landline telephones.  Even when Americans maintain both types of service, they are opting increasingly to use wireless over their landline.

21.     For Americans living in "wireless only" homes and working in "wireless only" businesses, cell phones are their only lifeline in emergencies.

22.     To meet the policy goals established by Congress, and provide personal wireless services to local businesses, public safety entities, and the general public, AT&T must consistently update its technology, facilities, and network to keep up to date with customers' ever-growing demand for mobile services, including mobile data service, wireless phone

6

coverage, and emergency services communications including FirstNet. Among other things, AT&T must create and maintain a network of "cell sites," each of which consists of antennas and related equipment designed to send and receive radio signals.

23.     Wireless devices using all-digital technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antennas feed the signals to electronic devices housed in a small equipment cabin or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to a base station controller subsequently routing the calls throughout the world.

24.     In order to provide reliable service to a user, coverage must overlap in a grid pattern resembling a honeycomb. In order for the entire network to be operational, there must be properly placed cell sites installed and functioning so that reliable coverage can be realized. Only when the entire system is operational will a user have service and be able to partake in uninterrupted conversations throughout a given territory. If there is no functioning cell site within a given area, there would be no service for customers within that area and mobile customers who travel through the area will experience an unacceptable level of dropped calls.

25.     When there is a need to improve coverage in a specific area, AT&T's engineers produce a search ring, identifying the area within which a wireless facility of the necessary height must be located or upgraded. The study takes into account the topography of the land, the coverage boundaries of neighboring cells, and other factors.

26.     AT&T has an existing communication tower atop a water tower in the City. The existing tower serves a large residential and commercial area along Highway 169 which is subject to a lease with the owner of the water tower.

27.     Recently, AT&T's lease with the owners of the water tower expired, and the parties are unable to agree to lease terms that are commercially appropriate for AT&T. AT&T's communications tower remains at the tower on a month-to-month basis, and AT&T could be required to decommission its facilities at any time.

28.     When AT&T decommissions its existing communication facilities at the water tower, AT&T will be unable to maintain existing coverage in the area, resulting in months of degraded service, possible communication outages for cellular users in St. Joseph and the surrounding areas, and potential impacts to E911 services in the area.

29.     AT&T conducted a search for an acceptable alternative site for its existing tower within a one-quarter mile radius of the existing tower. The search radius was selected due to the need to replace the "footprint" of coverage area currently provided by the existing tower.

30.     AT&T's search included researching any existing tall structures (buildings, other towers, water towers) within one-quarter mile of the existing tower.

31.     Other than the water tower, which for the aforementioned reasons is not a feasible location for AT&T's equipment, there are no existing towers within the search area upon which to place AT&T's antennas. Because there are no suitable existing towers in the area, AT&T was forced to identify potential sites for a new facility.

32.     AT&T investigated suitable properties within the area that were appropriate for a wireless communications facility. An appropriate candidate must allow for the continued coverage and capacity in the existing coverage area, comply with the zoning requirements, be leasable, and be buildable. A property that does not meet each of those requirements is not a viable candidate.

33.     There were four parcels in the search area that were large enough to accommodate a tower facility and meet the City's setback requirements. Each was investigated as an option for the proposed Facility.

34.     Only one parcel owner was interested in leasing their property to AT&T: parcel number 087-213-06-0-42-01-001.00, located at 3802 Karnes Road, St. Joseph, Missouri 64506.

35.     The site of AT&T's proposed Facility would be located within a fenced-in, leased portion of the parcel at 3802 Karnes Road, (the "Site"). The Site is located on the opposite side of I-29 from the existing water tower site.

36.     The Site is the only property in the search area that would allow AT&T to ensure uninterrupted coverage and capacity in AT&T's network, including FirstNet.

37.     By placing the proposed Facility, a 175-foot monopole, at the proposed Site, AT&T will avoid loss of service in the St. Joseph area.

38.     The proposed Facility is critical for AT&T to maintain a seamless wireless telecommunications network and to provide continued levels of coverage and capacity in the area.

## II.  AT&T's Original Conditional Use Permit Application

39.     The Site is zoned R1-A Single Family Residential, therefore telecommunications towers and facilities "may be conditionally allowed provided they meet the provisions of and a Conditional Use Permit is issued in accordance with Section 31-070" and Sections 31-300 to 31-311 of the City Code. *See* City Code, § 31-021(d)(22).

40.     Section 31-306 of the City Code provides that a proposal to construct a wireless facility not otherwise permitted therein shall only be permitted subject to the following requirements:

a. "[T]he approval of a Conditional Use Permit (a "CUP") authorized consistent with Section 31-070 following a duly advertised public hearing by the planning commission and city council,"

b. The submission of an application conforming to certain requirements,

c. The applicant clearly demonstrating, by substantial evidence, that placement of wireless communications facilities pursuant to a permitted uses or administrative permit under the Telecom Code of this article is not technologically or economically feasible,

d. Findings by the City Council that:

i. "That the design of the wireless communications facilities, including ground layout, maximally reduces visual degradation and otherwise complies with provisions and intent of this article;

ii. That the design is visually compatible with the area, will not distract from the view of the surrounding area, is maximally concealed or blended in with the environment and will not adversely affect property values;

iii. That such conditional use shall not be inconsistent or adversely affect the regular permitted uses in the district in which the same is located; and

iv. That the proposal fully complies with applicable law including the general requirements herein; provided that an exception to the general requirements, other than building or safety code compliance, may be approved upon evidence that compliance is not feasible or is shown to be unreasonable under the specific circumstances shown."

41. AT&T's site acquisition representative submitted an Application for Approval of Conditional Use Permit for the Facility on the Site on March 30, 2021 (the "Original Application"). A copy of the Original Application is attached as **Exhibit A**.

42. AT&T proposed to develop a 175-foot self-supporting telecommunications tower with a 5-foot lightning rod on the Site. The height was determined by AT&T to be the minimum needed to maintain its coverage and capacity levels, including FirstNet coverage, for the area surrounding the Site.

43. All required and necessary supporting documents were included with the Original Application in compliance with the City Code and evidencing the need for the proposed Facility

10

to provide and maintain wireless telecommunications coverage and capacity in the City. A copy of these supporting documents are included in <u>Exhibit A</u>.

44.     Included in the attachments to the Original Application was a 44-page "Telecommunications Facility Impact Study" prepared by a real estate appraisal and consulting firm for an area of northern Kansas City. The study utilized paired data analysis, multiple regression analysis, and market-participant interviews and showed no measurable diminution in value for residential properties located within close proximity to a 155-foot tall monopole telecommunications tower.

**III. Approval by the Planning Commission and First Denial by the City Council**

45.     On April 22, 2021 and May 27, 2021, the City's Planning Commission heard public comment from AT&T's representative and the public.

46.     During the April 22 and May 27 hearings, several residents living near the Site voiced their opposition to construction of the Facility.

47.     On May 27, 2021, the Planning Commission made findings and voted to recommend to the City Council that the Original Application be approved.

48.     On June 28, 2021, the City Council held a public hearing on the Original Application.

49.     At the public hearing, three AT&T representatives appeared and presented information and evidence about the application. These representatives included a site acquisition representative, an RF engineer, and an external affairs representative who is also a longtime resident of St. Joseph.

50.     AT&T provided evidence that the Site was the only site in the search area that could maintain AT&T's coverage and capacity levels and meet the City's siting requirements.

51.     AT&T presented evidence that it had evaluated other sites in the area and that the Site was the only site available that would meet zoning requirements, on which a landowner was willing to allow construction of the proposed Facility, was buildable, and would provide the coverage and capacity levels needed to maintain AT&T's network.

52.     AT&T presented evidence that the presence of other cell sites around the coverage area will not allow AT&T to maintain its telecommunications network's coverage and capacity in the coverage area, including FirstNet, when the water tower site is removed, creating a significant gap in coverage and capacity.

53.     AT&T offered evidence that the height of the tower must exceed 150 feet, and in fact must be 175 feet tall.

54.     AT&T offered evidence the proposed tower would be safe and met all of the requirements of the Ordinance.

55.     AT&T addressed all of the grounds for considering a conditional use permit application under the Code. *See, e.g.*, Ex. A; Code at § 31-306.

56.     AT&T's substantial evidence supported granting the conditional use permit.

57.     During the public comment portion of the public hearing, residents living near the Site voiced opposition to the Facility's construction.

58.     Public testimony and written statements from local residents comprised the entirety of the evidence presented in opposition to the Application or to AT&T's presentation.

59.     The statements made at the public hearing and in the letters consisted of unsupported opinion evidence concerning other locations for the Facility, property values, and aesthetics.

60.     Each of the purported alternative locations where the proposed Facility could be placed were either outside the search area designated by AT&T or were properties owned by parties that did not respond to AT&T's inquiries or declined to lease their property to AT&T.

61.     On July 12, 2021 the City Council voted to deny the Original Application, and to adopt the Findings of Fact and Conclusions of Law dated July 8, attached hereto as **Exhibit B**.

62.     The Findings of Fact and Conclusions of Law claimed that the Original Application was deficient because (1) it failed to show that the proposed Facility could not be built as a designed support structure; (2)  the proposed Facility was not designed to maximally reduce visual degradation or conceal the tower; (3)  AT&T did not consider alternate designs for the proposed Facility, including a flagpole design; and, (4) the proposed Facility would adversely affect the regular permitted uses of the residentially zoned district.

63.     The Findings of Fact and Conclusions of Law did not address the adequacy or inadequacy of the proposed ground layout for the proposed Facility.

### IV. Resubmission, Denial, and Rejection of Appeal

64.     While AT&Ts Original Application met all requirements of the City Code, AT&T endeavored to address the purported deficiencies identified by the City. On August 3, 2021, AT&T filed its Revised Application for Conditional Use Permit for a Telecommunications Tower pursuant to § 31-302(e) of the Code, attached hereto as **Exhibit C** ("Revised Application").

65.     Section 31-302 provides:

> *Opportunity to cure*. In case of a denial, the applicant may cure the deficiencies identified by the city and resubmit the application within 30 days of the denial without paying an additional application fee. The city shall approve or deny the revised application within 30 days of resubmission and limit its review to the deficiencies cited in the original denial.

13

66.     In its Revised Application, AT&T remedied the alleged deficiencies outlined in the City Council's Findings of Fact and Conclusions of Law dated July 8.

67.     The Revised Application proposed a monopine design and a monopole design with flush-mount antennas, and also provided consideration for a flagpole design, which AT&T included because the City Council had specifically admonished the lack of a flagpole design in AT&T's original application.

68.     On August 23, 2021, the City Council held a public hearing on the Revised Application, during which residents living near the Site again voiced opposition to the Facility's construction.

69.     On August 30, 2021, the City Council voted to deny the Revised Application, and to adopt the Findings of Fact and Conclusions of Law dated August 26, ("Revised Findings") attached hereto as **Exhibit D**.

70.     The Revised Findings stated that the designs proposed in the Revised Application did not maximally reduce visual degradation, citing the proposed ground layout of the proposed Facility as a reason for the City Council's denial of the Revised Application.

71.     The Revised Findings also contended that the existence of an area with slightly higher elevation on the proposed parcel of land shows that AT&T did not attempt to maximally reduce visual degradation because a higher ground elevation would reduce the height of the tower.

72.     The elevation of the location to which the Revised Findings refers is not high enough to lower the height of the proposed tower to less than 150 feet. Use of that location would also require the removal of considerably more existing trees than using the Site, which AT&T considered and testified to at the first City Council hearing.

73.     In denying the Revised Application, the Revised Findings stated that AT&T did not provide evidence showing that a different design to better fit in with the area was not technologically or economically feasible.

74.     The Revised Findings cited aesthetic concerns regarding the height of the tower as a reason for its denial of the Revised Application.

75.     The Revised Findings cited concerns about real estate values as a reason for the denial of the Revised Application.

76.     The Revised Findings acknowledged that the record evidence supporting the concerns about real estate values is opinion-based.

77.     The City's denial of the Revised Application was not based on substantial evidence.

78.     On September 9, 2021, AT&T sent to the City and City Council a Notice of Appeal pursuant to § 31-311 of the Code.

79.     On September 15, 2021, AT&T received a letter from the City informing AT&T that its request for an appeal was invalid under the Code and stating August 23, 2021 as the date of the final decision in the matter.

80.     The City's September 15 letter confirms that AT&T has exhausted its administrative remedies under the Code and is entitled to judicial review of the denial of its Revised Application under RSMo 536.100.

## CLAIMS

## COUNT ONE

### Failure to Comply with the
### <u>Supported by Substantial Evidence Requirement of the TCA</u>

81.     AT&T incorporates by reference the allegations set forth in Paragraphs 1-80 above as if set forth fully herein.

82.     The TCA states in pertinent part:

> (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii).

83.     AT&T presented substantial evidence in support of the Revised Application.

84.     The Revised Application complied with every aspect of the Code.

85.     AT&T addressed all of the grounds for considering a conditional use permit application under the Code.

86.     Defendants' denial of the Revised Application fails to meet the "supported by substantial evidence contained in a written record" requirement of the TCA because there is no evidence, much less substantial evidence, supporting denial of the Revised Application.

87.     Defendants' erroneous interpretations and decisions have caused and will continue to cause AT&T irreparable harm.

## COUNT TWO

### Unlawful Prohibition of the
### Provision of Personal Wireless Services

88.     AT&T incorporates by reference the allegations set forth in Paragraphs 1-87 above as if set forth fully herein.

89.     The TCA specifically provides, in pertinent part, that state and local government regulation of personal wireless service facilities:

> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

16

47 U.S.C. § 332(c)(7)(B)(i)(II).

90.    The Revised Application meets the requirements of Code concerning telecommunications towers.

91.    AT&T complied with all of the requirements necessary for approval of the Revised Application.

92.    AT&T provided substantial evidence of a significant gap in AT&T's coverage and capacity and evidenced a lack of reasonable alternative locations for the proposed wireless telecommunications facility.

93.    An effective prohibition occurs where a local governing body materially inhibits a wireless service provider's ability to engage in any variety of activities related to its provision of wireless services. These activities include filling a gap in coverage, densifying a wireless network, improving capacity, or otherwise improving service capabilities. An effective prohibition of services in violation of the TCA may occur where a local government action restricts new services or the improvement of existing services.[1]

94.    AT&T provided evidence presented in the Revised Application and at the City Council hearings that only the proposed Site and Facility would meet AT&T's coverage and capacity requirements.

95.    The Revised Application was based upon sound engineering principles, user operational requirements, and marketplace demands.

96.    Defendants prohibited AT&T from filling a gap in AT&T's coverage, densifying a wireless network, improving capacity, or otherwise improving service capabilities.

---

[1] *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, FCC 18-133 (Sept. 26, 2018), available at https://docs.fcc.gov/public/attachments/FCC-18-133A1.pdf (last visited August 27, 2021).

97.     Defendants restricted new services and/or the improvement of existing services.

98.     Denial of the Revised Application prevents AT&T from constructing a wireless communications tower on the proposed Site.

99.     Denial of the Revised Application has the effect of prohibiting the provision of wireless services in the area of the proposed Site in violation of the TCA.

## COUNT THREE

### Violation of the Uniform Wireless Communications Infrastructure Deployment Act, RSMo § 67.5094

100.     AT&T incorporates by reference the allegations set forth in Paragraphs 1-99 above as if set forth fully herein.

101.     The Missouri Siting Act limits the actions a local governmental body can take with respect a telecommunications carrier's facility application.

102.     Section 67.5094 of the Missouri Siting Act provides, in pertinent part:

> In order to ensure uniformity across the state of Missouri with respect to the consideration of every application, an authority shall not:

> (1) Require an applicant to submit information about, or evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;

> (2) Evaluate an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa . . . . [or]

> (16) Impose any requirements or obligations regarding the presentation or appearance of facilities, including, but not limited to, those relating to the kind or type of materials used and those relating to arranging, screening, or landscaping of facilities if such regulations or obligations are unreasonable. . . .

RSMo § 67.5094(1), (2), and (16).

103.    At the June 28, 2021 City Council hearing, the City Council evaluated AT&T's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from the proposed Site, including but not limited to business decisions concerning lease terms with the owner of the water tower, the quality of service to or from the proposed Site, and the demand for service.

104.    At the June 28, 2021 City Council hearing and in the Revised Findings of Fact, the City Council evaluated AT&T's applications based on the availability of other potential locations for the placement of the proposed Facility.

105.    The Missouri Siting Act requires that regulations regarding appearances and screening be reasonable. The City Council summarily denied each of four designs offered by AT&T based on aesthetic concerns regarding the height of the proposed tower. The requirement placed on AT&T either shrink the tower or design a 175-foot tall structure to blend in with single-family homes and 40-foot tall trees is unreasonable and constitutes an arbitrary appearance regulation.

106.    Because the Board evaluated criteria that were prohibited by the Missouri Siting Act and improperly applied regulations regarding appearances and screening, the Board's denial violated the Missouri Siting Act, § 67.5094(1), (2), and (16).

## COUNT FOUR

### Judicial Review of the City Council's Action, RSMo § 536.100

107.    AT&T incorporates by reference the allegations set forth in Paragraphs 1-106 above as if set forth fully herein.

108.    The City Council's denial of the Revised Application is a final decision in a contested case which is entitled to judicial review pursuant to RSMo § 536.100.

109.    AT&T presented the City Council with substantial evidence that the proposed Facility satisfied the requirements for the issuance of a conditional use permit for a telecommunication tower.

110.    Defendants' interpretation of the Code and related actions and decisions as described herein improperly prohibit AT&T from proceeding with construction of the Facility at the Site.

111.    The City Council's denial is illegal and must be reversed because it:

    a.   Is in excess of the statutory authority or jurisdiction of the agency,

    b.   Is unsupported by competent and substantial evidence upon the whole record,

    c.   Is arbitrary, capricious or unreasonable,

    d.   Involves an abuse of discretion, and

    e.   Is impermissibly based on alleged deficiencies that were not raised in the City Council's first Findings of Fact and Conclusions of Law, in violation of the Code.

112.    AT&T has exhausted all available remedies under applicable administrative review laws and ordinances, and requests judicial review of this decision.

**PRAYER FOR RELIEF**

WHEREFORE, AT&T respectfully prays that this Court grant it relief as follows:

a.      Enter an order declaring the City's decisions violate and are preempted by 47 U.S.C. § 332(c)(7);

b.      Enter an order declaring the City's decisions violate and are preempted by RSMo § 67.5094;

20

c.      Enter an order requiring the Defendants to approve AT&T's Revised Application and authorize AT&T to install its proposed Facility at the Site and to issue all other permits required to install, operate, and maintain the Facility; and

d.      Order such other relief as the Court deems appropriate.

Dated:  September 21, 2021          Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By:  /s/  Luke G. Maher
        Luke G. Maher
        Cathleen S. Aubuchon
        7676 Forsyth Blvd., Suite 2230
        St. Louis, Missouri 63105
        Telephone: (314) 505-8800
        Facsimile: (314) 505-8899
        luke.maher@nortonrosefulbright.com
        cate.aubuchon@nortonrosefulbright.com

        Attorneys for Plaintiff